# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# GREAT FALLS DIVISION

| | |
|---|---|
| GORDON SEES THE GROUND, JR., <br><br> Plaintiff, <br><br> vs. <br><br> CORRECTIONS CORPORATION OF AMERICA and C.C. EMERSON, <br><br> Defendants. | Cause No. CV 11-0044-GF-SEH-RKS <br><br> FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE TO DENY DEFENDANTS' MOTION TO DISMISS |

## I. SYNOPSIS

Pending is Defendants' Motion to Dismiss for failure to exhaust administrative remedies. C.D. 13. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. This proceeding was referred to this Court pursuant to Local Rule 72.2 and 28 U.S.C. § 636(b)(1). Mr. Sees the Ground alleges Defendants failed to protect him from an assault by another inmate on March 29, 2011. He filed this action without counsel and is proceeding in forma pauperis.

Because Crossroads Correctional Center's grievance procedure was not adequately communicated to Mr. Sees the Ground prior to the March 29, 2011

incident, Defendants' motion should be denied.

## II. MOTION TO DISMISS STANDARD

Defendants filed their Motion to Dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. A motion to dismiss based on a prisoner's failure to exhaust administrative remedies is properly the subject of an unenumerated motion under Federal Rule of Civil Procedure 12(b). Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). "In deciding a motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Wyatt, 315 F.3d at 1119-20.

Defendants bear the burden of establishing that a plaintiff failed to exhaust administrative remedies. See Wyatt, 315 F.3d at 1120. If the court concludes that administrative remedies have not been exhausted, the unexhausted claims should be dismissed without prejudice. Wyatt, 315 F.3d at 1120; see also Jones v. Bock, 549 U.S. 199 (2007).

## III. FACTUAL BACKGROUND

### A. March 29, 2011 Incident

Mr. Sees the Ground's alleges he was assaulted in his cell on March 29, 2011 at Crossroads Correctional Center. He contends he asked C.C. Emerson to move him because he feared he would be assaulted. Mr. Sees the Ground seeks to

hold C.C. Emerson liable because he refused to move him and allowed the attack to happen.

 B. **Administrative Remedies**

Warden Frink testified by affidavit that at all times relevant to the complaints at issue, Crossroads Correctional Center followed the grievance procedure mandated by Montana Department of Corrections Policy 3.3.3. He describes a four-step grievance process allowing an inmate to file an informal resolution form, a formal grievance, an appeal to the Warden, and a final appeal to the Director of the Montana Department of Corrections. C.D. 14, pp. 13-14. Warden Frink refers to a copy of Montana Department of Corrections Policy 3.3.3 as being attached to his affidavit, but the policy attached to the affidavit and the policy which sets for the four-step grievance process is Montana State Prison Policy 3.3.3.

Grievance Officer Brandy Sherrard testified by affidavit that Mr. Sees the Ground received orientation at the Montana State Prison on June 30, 2010 including information on the topics of grievances, grievable issues, non-grievable issues, and emergency issues. C.D. 17, p. 2, ¶ 5. Officer Sherrard also testified that Mr. Sees the Ground received orientation on October 26, 2010 at Crossroads Correctional Center on various topics including grievances. C.D. 17, pp. 2-3, ¶ 6.

Mr. Sees the Ground contends he did not receive orientation during intake at Crossroads Correctional Center upon his arrival on October 26, 2010. He states that upon his arrival at Crossroads he was given a copy of the inmate handbook attached to his response. That inmate handbook had an attached copy of Montana Department of Corrections Policy 3.3.3. C.D. 21, p. 2. He also met with a woman named Ms. Yaskew who asked him questions about his separation needs and any issues with the Prison Rape Elimination Act ("PREA"). Mr. Sees the Ground alleges he did not watch a video, there was no verbal orientation by a staff member, and he did not have an opportunity to ask questions during the intake process. C.D. 21, p. 2.

Officer Sherrad also testified by affidavit that she discussed the grievance policy and grievance process at Crossroads with Mr. Sees the Ground on April 23, 2011. C.D. 17, p. 3, ¶ 7. Mr. Sees the Ground disputes this statement. He contends Officer Sherrad refused to accept his informal resolution form as presented. He states Officer Sherrad never informed him that the relief he requested was not available through the grievance process. He contends the only way Officer Sherrad would accept his informal resolution form was to make changes on the line which says "action requested." He states Officer Sherrard advised him of what to write instead of his original request. He contends his

4

original request was to reverse his conviction and dismiss the infraction with prejudice. He states Officer Sherrard did not provide him with the appropriate documents to proceed. C.D. 21, pp. 2-3.

## IV. ANALYSIS

Defendants move to dismiss arguing Mr. Sees the Ground failed to properly exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). The PLRA's exhaustion requirement states:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); see also Porter v. Nussle, 534 U.S. 516, 524-25 (2002); Booth v. Churner, 532 U.S. 731, 741 (2001). This means a prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Woodford v. Ngo, 548 U.S. 81, 88 (2006). Exhaustion is mandatory. Booth, 532 U.S. at 741.

It is undisputed that the grievance policy followed at Crossroads Correctional Center on March 29, 2011 (the date of the alleged incident) was Montana Department of Corrections Policy 3.3.3. Frink Affidavit C.D. 14, p. 12, ¶

5

5; Sees the Ground response C.D. 16; Sherrard Affidavit C.D. 17, p. 2, ¶ 4. Mr. Sees the Ground submits and Defendants do not dispute that the Crossroads Inmate Handbook in effect on March 27, 2011 (the date of the alleged incident) refers to and attaches a copy Montana Department of Corrections Policy 3.3.3. C.D. 16.

Montana Department of Corrections Policy 3.3.3 is a general policy which sets out the Montana Department of Corrections directives for grievances and appeal processes for all Department of Corrections divisions, contracted facilities, and programs. C.D. 16-2, p. 3. It does not provide a specific grievance procedure and does not lay out the four-step process described by Warden Frink. It is more of a generalized statement telling facilities that they must have a grievance policy and what that policy should include. There are no deadlines or actual procedures set forth in this policy.

While Warden Frink's affidavit referred to Montana Department of Corrections Policy 3.3.3, it attached Montana State Prison Policy 3.3.3. Montana State Prison Policy 3.3.3 is the grievance procedure described in Warden Frink's affidavit. While the administration may have intended to be following Montana State Prison Policy 3.3.3, the policy attached to the inmate handbook was Montana Department of Corrections Policy 3.3.3.

The Ninth Circuit has held that an inmate's failure to exhaust administrative

remedies may be excused where "circumstances render administrative remedies effectively unavailable." Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) (holding that inmate's failure to exhaust his administrative remedies was excused because he took reasonable steps to exhaust his claim and was precluded from exhausting, not through his own fault but by the Warden's mistake).

A prisoner must "complete the administrative review process in accordance with the applicable procedural rules." Woodford, 548 U.S. at 88. But here, there were no procedural rules available to Mr. Sees the Ground. The administrative remedies were effectively unavailable because they were not adequately communicated to Mr. Sees the Ground prior to the March 29, 2011 incident. As such, Mr. Sees the Ground's failure to exhaust administrative remedies must be excused.

Grievance Officer Brandy Sherrard indicated that on April 23, 2011, she explained the grievance process to Mr. Sees the Ground. She told him he could request an investigation into staff member conduct but would need to specifically state what he wanted investigated. During this discussion she discussed with Mr. Sees the Ground the process of filing an informal resolution form, then a formal grievance, as well as the two level appeal process. She also discussed the timeliness required with Mr. Sees the Ground. But it is really irrelevant what Mr.

Sees the Ground was told after the fact regarding the grievance policy because the policy he had been given with the inmate handbook was the general Grievance Program requirements put out by the Department of Corrections–it was not a four-part procedure as set out in MSP Policy 3.3.3. In addition, by April 23, 2011, Mr. Sees the Ground was out of time (under MSP Policy 3.3.3) to grieve the March 29, 2011 incident.

Defendants also submitted evidence that Mr. Sees the Ground went through orientation on grievance issues at Montana State Prison, but there is no indication Mr. Sees the Ground was informed the grievance policy was the same for Montana State Prison and Crossroads, if in fact it is. Defendants also submitted evidence that Mr. Sees the Ground went through orientation at Crossroads, but there is no indication what was discussed at that orientation with regard to the grievance policy. Mr. Sees the Ground disputes information on the grievance policy was presented during orientation and he has submitted a number of affidavits in support of this assertion. C.D. 21, 21-1.

## V. CONCLUSION

It is undisputed that the policy attached to the Inmate Handbook in effect on March 29, 2011 was Montana Department of Corrections Policy 3.3.3 which did not provide a specific grievance procedure. As such, the grievance procedure was

8

effectively unavailable to Mr. Sees the Ground as it was not adequately communicated.

It is **RECOMMENDED** that Defendants' Motion to Dismiss C.D. 13 be denied.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Any objections must itemize each factual finding to which objection is made and must identify the evidence in the record relied upon to contradict that finding. In addition, the parties must itemize each recommendation to which objection is made and must set forth the authority relied upon to contradict that recommendation.

Failure to assert a relevant fact or argument in objections to these Findings and Recommendations may preclude the parties from relying on that fact or argument at a later stage of the proceeding. A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and

Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 19th day of June, 2012.

       /s/ Keith Strong
Keith Strong
United States Magistrate Judge