IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | |
|---|---|
| GORDON SEES THE GROUND, JR., <br><br> Plaintiff, <br><br> vs. <br><br> CORRECTIONS CORPORATION OF AMERICA and C.C. EMERSON, <br><br> Defendants. | CV 11-0044-GF-SEH-RKS <br><br><br> FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

**Synopsis**

Gordon Sees the Ground alleges that Defendants Corrections Corporation of America and C.C. Emerson failed to protect him from an attack by another inmate on March 29, 2011. Mr. Sees the Ground has not shown that Officer Emerson knew he was at risk or the Corrections Corporation of America failed to adequately train Officer Emerson. Defendants' summary judgment motion should be granted.

**Jurisdiction**

Mr. Sees the Ground filed suit in federal court, in the Great Falls Division of

1

the District of Montana. CD 2. Venue is proper, as Mr. Sees the Ground is incarcerated in and alleges wrongs committed in Toole County, Montana. Local Rule 1.2(c)(3). His Complaint alleges violations of the Eighth Amendment of the United States Constitution which invokes federal question jurisdiction. 28 U.S.C. § 1331. The Court has personal jurisdiction over the parties, all of whom are found in Montana. Fed. R. Civ. P. 4(k)(1)(A); Mont. R. Civ. P. 4(b). The case is assigned to the Hon. Sam E. Haddon, Senior U.S. District Judge, and referred to the undersigned. CD 32; Local Rule 72.2(a)(1).

## Status

Mr. Sees the Ground filed an Amended Complaint on September 12, 2011. CD 6. After the review required by 28 U.S.C. §§ 1915, 1915A, Defendants Rodriguez, Wirsching, and Weaver were dismissed (CD 10) and the Amended Complaint was served upon Defendants Corrections Corporation of American and Emerson (hereinafter "Defendants"). Defendants filed a Motion to Dismiss for Failure to Exhaust Administrative Remedies on December 30, 2012. CD 13. It was denied July 13, 2012. CD 24. Defendants filed an Answer to the Amended Complaint on August 30, 2012 (CD 26) and a Scheduling Order was issued September 11, 2012. CD 27. The period for discovery concluded on February 11, 2012. CD 27. On March 8, 2013, Defendants filed their Motion for Summary

Judgment and provided Mr. Sees the Ground with a Rand notice, informing him of the potentially dispositive motion. CD 36, 42. Mr. Sees the Ground responded (CD 43) and Defendants filed a reply. CD 45. Defendants' Motion for Summary Judgment is now fully briefed and ripe for review.

### Standards

**Summary judgment**

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party moving for summary judgment has the initial burden of showing there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Once the moving party has made a prima facie showing that it is entitled to summary judgment, the burden shifts to the opposing party to show the existence of a genuine issue of material fact. Id.

**Eighth Amendment**

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." Labatad v. Corrections Corp. of America, ___ F.3d ___, 2013 WL 1811273 (9th Cir. May 1, 2013)(citing Farmer v. Brennan, 511 U.S.

3

825, 832-33 (1994); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005)). But it is not "every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834. To establish a constitutional violation, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. See Farmer, 511 U.S. at 834. A prison official may be found liable only when he "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Labatad, 2013 WL 1811273 at *4 (quoting Farmer, 511 U.S. at 847).

## Facts

Mr. Sees the Ground was attacked by another inmate on March 29, 2011. Prior to that attack, Mr. Sees the Ground had asked Defendant Emerson to remove him from the E-Pod on two occasions. CD 38: Defendants' Statement of Undisputed Facts, ¶ 24.

Mr. Sees the Ground first asked Defendant Emerson to remove him from the E-Pod on March 14, 2011 because Mr. Sees the Ground's infirmary aid almost attacked him. CD 6: Amended Complaint, pp. 5, 7. The infirmary aide was not the same person who assaulted Mr. Sees the Ground on March 29, 2011. CD 38, ¶ 11. Mr. Sees the Ground admits that he knows of no connection between the

dispute with his infirmary aide on March 14, 2011 and the altercation that took place on March 29, 2011. CD 38, ¶ 12; CD 47-1: Defendants' Discovery requests, p. 3; CD 41-1, Plaintiff's Discovery responses, p. 2. However, Mr. Sees the Ground alleges he told Officer Emerson at that time that he was in fear for his life because other inmates had labeled him a "snitch." CD 6, p. 7.

Mr. Sees the Ground again requested removal after an incident on March 28, 2011. CD 6, pp. 7-9. Mr. Sees the Ground was standing under a staircase when another inmate spilled hot water on him. Prison officials investigated and determined that the inmate spilled the water accidentally. CD 38, ¶ 8. The inmate who spilled the water was not the same inmate who assaulted Mr. Sees the Ground on March 29, 2011. CD 38, ¶ 8; CD 43–Plaintiff's Statement of Genuine Issues of Disputed Facts, ¶ 1.

Prior to the attack on March 29, 2011, another inmate accused Mr. Sees the Ground of reporting a contraband tattoo gun to guards. CD 6, p. 9; CD 40-1, p. 21. The inmate accused Mr. Sees the Gun of being a "snitch" and threatened to fight Mr. Sees the Ground. Mr. Sees the Ground saw Officer Emerson in the pod control room and so he took off his shirt, hoping Officer Emerson would

intervene.[1]  Officer Emerson saw Mr. Sees the Ground walking out of his cell with his hair down and shirt off.  CD 38.  Mr. Sees the Ground did not tell Officer Emerson that he was in distress, trouble or need of assistance.  CD 38, ¶ 16.  Mr. Sees the Ground put his shirt back on and there was no physical altercation at that time. CD 40-1, p. 21; CD 44, p. 3.

Mr. Sees the Ground then spoke to other inmates, including the inmate who eventually assaulted him.  Mr. Sees the Ground told that inmate to "do what you need to do."  CD 40-1, p. 21.  Mr. Sees the Ground went back to his cell and that inmate came into the cell and assaulted him.  CD 38, ¶ 10.

**Arguments**

**Defendants' Motion for Summary Judgment**

Defendants argue that no facts exist to support the claim that Officer Emerson would have known that Mr. Sees the Ground was at risk of harm from the inmate who attacked him on March 29, 2011.  Defendant Corrections Corporation of America argues Officer Emerson received extensive training at Crossroads Correctional Center.

**Mr. Sees the Ground's Argument**s

---

[1] In discovery, Mr. Sees the Ground indicated that it's against the rules to be topless in the dayroom and Officer Emerson always enforces this rule. CD 41-1, p. 6:  Plaintiff's Discovery Responses.

Mr. Sees the Ground argues that Officer Emerson should have granted his requests for removal from the E-Pod because Officer Emerson was aware other inmates were calling Mr. Sees the Ground a snitch, and because Officer Emerson knew of prior incidents of violence against Mr. Sees the Ground. Mr. Sees the Ground argues that if he had been moved he would not have been assaulted.

Mr. Sees the Ground alleges Corrections Corporation of America acted with deliberate indifference in failing to protect him from harm by neglecting to review incident reports and not training its employees on how to react to possible imminent danger to inmates. He contends Corrections Corporation of America neglected its responsibilities toward inmate safety concerns by not monitoring its employees' indifference to his welfare. CD 6, p. 13.

## Analysis

### Officer Emerson

It is undisputed that Officer Emerson had no reason to believe Mr. Sees the Ground was at risk from being assaulted specifically by the inmate who attacked him on March 29, 2011. However, a prison official cannot escape liability by showing that he did not know that "the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault" if he was otherwise aware of an obvious, substantial risk to the inmate's safety. Farmer, 511

7

U.S. at 843. The question is whether the defendant was deliberately indifferent to a substantial risk of serious harm to the plaintiff. Id.

Mr. Sees the Ground failed to present sufficient genuine issues of material fact to demonstrate that Officer Emerson knew of and disregarded a substantial risk to Mr. Sees the Ground's safety. Mr. Sees the Ground points to three incidents which he contends should have made Officer Emerson aware of a substantial risk of harm to him. Mr. Sees the Ground provides no facts in support of this allegation that he told Officer Emerson that other inmates had labeled him a "snitch." He does not explain whether Officer Emerson knew why Mr. Sees the Ground was being labeled a "snitch," who had called him or snitch, or how the incident with his infirmary aide was related to the label. There is no indication in the record that Mr. Sees the Ground was attacked on March 29, 2011 because other inmates considered him a "snitch." There is simply no evidence that Officer Emerson knew of facts supporting an inference, and that he drew an inference, of a substantial risk to Sees the Ground's safety based on Mr. Sees the Ground reporting that he'd been called a "snitch." See Labatad, 2013 WL 1811273.

The second incident, where hot water was spilled on Mr. Sees the Ground, was investigated by prison officials and determined to be an accident. Mr. Sees the Ground admitted in discovery that he had no evidence that the water was

8

intentionally spilled. CD 38; CD 47-1; CD 41-1, p.2. Mr. Sees the Ground shook the hand of the inmate who spilled the water. CD 40-1, p. 21. Nothing about this incident would have indicated to Officer Emerson that there was a substantial risk of serious harm to Mr. Sees the Ground's safety.

Lastly, Mr. Sees the Ground argues that the events on March 29, 2011 prior to the assault should have led Officer Emerson to the conclusion that there was a substantial risk of serious harm. Mr. Sees the Ground argues that not having a shirt on is a rule violation; therefore, when Officer Emerson should have interpreted the lack of a shirt as a request for help. No reasonable juror would conclude that Officer Emerson was being deliberately indifferent to Mr. Sees the Ground's safety when he failed to recognize that Mr. Sees the Ground's removal of his shirt in the day-room was a cry for help.

Mr. Sees the Ground also contends that Officer Emerson could have heard him asking other inmates why they were accusing him of snitching. He argues this should have prompted Officer Emerson to determine that Mr. Sees the Ground had been labeled a snitch and therefore needed protection. Even if Mr. Emerson heard the discussions taking place in the day-room prior to the assault, the record suggests that the assault arose not so much from Mr. Sees the Ground's possible report of contraband as from his confronting other inmates. See CD 40-1, p. 24.

9

Mr. Sees the Ground provides no factual evidence from which a reasonable juror could find that the inmate assaulted Mr. Sees the Ground because he believed him to be a snitch.

Officer Emerson's Motion for Summary Judgment should be granted.

**Corrections Corporation of America**

As previously stated, the liability criteria established in <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658, 694 (1978) has been extended to apply to private companies acting under color of state law. That category includes Corrections Corporation of America. CD 4, pp. 15-16. Therefore, Corrections Corporation of America can be held liable for an unconstitutional custom, policy or practice. Pursuant to <u>City of Canton v. Harris</u>, 498 U.S. 378 (1989), "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." <u>Id.</u> at 388. Mr. Sees the Ground has alleged that Corrections Corporation of America was deliberately indifferent to his safety by not training its employees regarding how to protect inmates. As set forth above, there was no violation of Mr. Sees the Grounds' Eighth Amendment constitutional rights. When no constitutional harm has been inflicted upon a victim, damages may not be awarded against a municipality. <u>City of Los Angeles v. Heller</u>, 475

10

U.S. 796, 799 (1986).

Corrections Corporation of America's motion for summary judgment should be granted.

## Certification Regarding Appeal

The Federal Rules of Appellate Procedure provide:

> [A] party who was permitted to proceed in forma pauperis in the district-court action, or who was determined to be financially unable to obtain an adequate defense in a criminal case, may proceed on appeal in forma pauperis without further authorization, unless:
>
> > (A) the district court-before or after the notice of appeal is filed-certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis and states in writing its reasons for the certification or finding;

Fed.R.App.P. 24(a)(3)(A).

Analogously, 28 U.S.C. § 1915(a)(3) provides "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." The good faith standard is an objective one. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A plaintiff satisfies the "good faith" requirement if he or she seeks review of any issue that is "not frivolous." Gardner v. Pogue, 558 F.2d 548, 551 (9th Cir. 1977) (quoting Coppedge, 369 U.S. at 445). For purposes of section 1915, an appeal is frivolous if it lacks any arguable basis in law

or fact.  Neitzke v. Williams, 490 U.S. 319, 325, 327 (1989); Franklin v. Murphy, 745 F.2d 1221, 1225 (9th Cir. 1984).

The finding that Defendants are entitled to judgment as a matter of law is so clear no reasonable person could suppose an appeal would have merit.  The Court should certify that any appeal of this matter would not be taken in good faith.

**Address Change**

At all times during the pendency of this action, Mr. Sees the Ground shall immediately advise the Court of any change of address and its effective date. Failure to file a notice of change of address may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

It is **RECOMMENDED:**

1.  Defendants' Motion for Summary Judgment CD 36 should be granted and this matter should be dismissed with prejudice.  The Clerk of Court should be directed to close the case and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

2.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.  No reasonable person could suppose an appeal would have merit.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

If the parties file objections, they must itemize each factual finding to which objection is made and identify the evidence in the record relied on to contradict that finding. In addition, they must itemize each recommendation to which objection is made and set forth the authority relied on to contradict that recommendation.

Failure to assert a relevant fact or argument in objections to these Findings and Recommendations may preclude the parties from relying on that fact or argument at a later stage of the proceeding. A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to

appeal. This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 11th day of June, 2013.

    /s/ Keith Strong
Keith Strong
United States Magistrate Judge